CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2013 JUL 30  AM 10: 41

DEPUTY CLERK_____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

|  |  |  |
|---|---|---|
| ABRAHAM & VENEKLASEN JOINT VENTURE; ABRAHAM EQUINE, INC.; and JASON ABRAHAM, | § § § § | |
| Plaintiffs, | § § | No. 2:12-cv-103-J |
| v. | § § | |
| AMERICAN QUARTER HORSE ASSOCIATION, | § § § | |
| Defendant. | § § § | |

## CHARGE TO THE JURY

MEMBERS OF THE JURY:

This case is submitted to you on specific questions about the facts, which you must decide from the evidence you have heard in this trial. You are the sole judges of the credibility of the witnesses and the weight to be given their testimony, but in matters of law you must be governed by the instructions in this charge.

Do not let bias, prejudice, or sympathy play any part in your deliberations.

Do not consider any statement which I have made, either in the course of trial or in these instructions, as an indication that I have any opinion about the facts of the case.

Do not decide who you think should win and then try to answer the questions accordingly. You will not decide any question by lot, by drawing straws, or by the use of any other method of chance. Do not reach your result by adding together each juror's figures and dividing by the number of jurors to get an average. Further, do not do any trading on your answers as your answers and verdict must be unanimous.

You are to answer all questions by a preponderance of the evidence. By this is meant the greater weight and degree of credible evidence before you. While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions which reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in the case.

In determining whether any fact in question has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

Generally speaking, there are two types of evidence which you may consider in properly finding the truth as to the facts in the case. One is direct evidence—such as testimony of an eyewitness. The other is indirect or circumstantial evidence—the proof of a chain of circumstances which points to the existence or nonexistence of certain facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions. An exception to this rule exists as to those whom we call "expert witnesses." Witnesses who, by education and experience, have become expert in some art, science, profession, or calling, may state an opinion as to relevant and material matter, in which they profess to be expert, and may also state their reasons for the opinion.

You should consider each expert opinion received in evidence in this case, and give it such weight as you may think it deserves. If you should decide that the opinion of an expert

witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not sound, or that the opinion is outweighed by other evidence, you may disregard the opinion entirely.

The testimony of a single witness, which produces in your minds the belief in the likelihood of truth, is sufficient for the proof of any fact, even though a greater number of witnesses may have testified to the contrary, if you believe this witness and have considered all the other evidence.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said something that was different from the testimony she gave at the trial.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

The statements and arguments of counsel are not evidence.

The parties have agreed, or stipulated, to certain facts given to you as Joint Exhibit A. This means that both sides agree that these are true facts. You must therefore treat these stipulated facts as having been proven.

### Statement of the Case

Plaintiffs Abraham & Veneklasen Joint Venture, Abraham Equine, Inc., and Jason Abraham own horses born through a technique called somatic cell nuclear transfer, which is commonly known as cloning. Defendant American Quarter Horse Association (AQHA) is the world's largest horse breed registry, and it records Quarter Horse pedigrees. In 2004, the AQHA passed Rule 227(a), which prevents cloned horses or their offspring from being registered in the AQHA registry. Plaintiffs allege that clones are indistinguishable from registered Quarter Horses but cannot effectively compete in the elite Quarter Horse market without registration in the AQHA. The AQHA has denied Plaintiffs' requests to change Rule 227(a) so they can register their clones.

Plaintiffs allege that Defendant violated Section 1 of the Sherman Antitrust Act, which applies only to concerted action that restrains trade. Plaintiffs claim that the AQHA Board of Directors and its Stud Book Registration Committee, acting on the AQHA's behalf, conspired to exclude Plaintiffs from the elite Quarter Horse market by agreeing to prevent registration of clones. Plaintiffs argue that this agreement to exclude their horses is a conspiracy in violation of the Texas Free Enterprise and Antitrust Act and Section 1 of the Sherman Antitrust Act.

Defendant denies that it violated Section 1 of the Sherman Antitrust Act. It contends that no conspiracy occurred, that the Stud Book and Registration Committee is a part of the AQHA and cannot create an unlawful agreement with the AQHA and that the market has not been restricted, that is, harmed by the exclusion of clones.

In a second claim, Plaintiffs allege that Defendant violated Section 2 of the Sherman Antitrust Act, which covers both concerted and independent action that monopolizes or threatens actual monopolization.

Plaintiffs claim that the AQHA has acquired and maintained a monopoly of the elite Quarter Horse market in the United States and Canada. They claim that the AQHA, acting through its Board of Directors and its Stud Book and Registration Committee, sought to maintain monopoly power by excluding Plaintiffs from that market by refusing to include clones in the AQHA registry. Plaintiffs claim that this alleged use of monopoly power to exclude them from registration violates the Texas Free Enterprise and Antitrust Act and Section 2 of the Sherman Act.

The American Quarter Horse Association denies that it violated Section 2 of the Act. It argues that Plaintiffs cannot define what an elite Quarter Horse is. The Defendant AQHA argues that it did not deny registration of clones for any unlawful reason, but that it had legitimate reasons for doing so, and that its actions did not seek to maintain a monopoly and did not threaten actual competition.

## Purpose of the Sherman Act

The purpose of the Sherman Antitrust Act is to preserve free and unfettered competition in the marketplace. The Sherman Act rests on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress.

### General Definitions

The following definitions apply to all of Plaintiffs' four antitrust claims, except that the definition of interstate commerce does not apply to Plaintiffs' Texas Free Enterprise and Antitrust Act claims.

Interstate commerce refers to business transacted across state lines or between persons having their residences or businesses in different states.  To affect interstate commerce, it is not necessary that Defendant's conduct itself occur in multiple states or directly affect transactions that span across multiple states.  It is enough if some of Defendant's activities that were affected by the conduct had some effect on interstate commerce.

Business or property: The term "business" includes any commercial interest or venture, and you are instructed that a Plaintiff has been injured in its "business" if you find that it has suffered injury to any of its commercial interests or enterprises as a result of Defendant's alleged antitrust violation.

The term "property" includes anything of value plaintiff owns, possesses, or in which plaintiffs have a protectable legal interest.  You are instructed that a Plaintiff has been injured in its "property" if you find that anything of value that it owns, possesses, or has a legal interest in has been damaged as a result of Defendant's alleged antitrust violation.  You are further instructed that a Plaintiff has been injured in its "property" if you find that it has paid an inflated price for goods, services, any legal interest of value, or has lost money as a result of Defendant's alleged antitrust violation.

Relevant Market: Plaintiffs have the burden of showing by a preponderance of the evidence that harm to competition occurred in an identified market, known as a "relevant market." Defining the relevant market is essential because you are required to make a judgment

about whether Defendant has violated antitrust law in a properly defined economic market. To prove relevant market, Plaintiffs must prove by a preponderance of the evidence both the relevant product market and the relevant geographic market.

*Relevant Product Market*: The basic idea of a relevant product market is that the products within it are reasonable substitutes for each other from the buyer's point of view; that is, the products compete with each other. In other words, the relevant product market includes the products that a consumer believes are reasonably interchangeable or reasonable substitutes for each other. This is a practical test with reference to actual behavior of buyers and marketing efforts of sellers. Products need not be identical or precisely interchangeable as long as they are reasonable substitutes. Thus, for example, if consumers seeking to cover leftover food for storage considered certain types of flexible wrapping material—such as aluminum foil, cellophane, or even plastic containers—to be reasonable alternatives, then all those products would be in the same relevant product market.

To determine whether products are reasonable substitutes for each other, you should consider whether a small but significant permanent increase in the price of one product would result in a substantial number of consumers switching from that product to another. Generally speaking, a small but significant permanent increase in price is approximately a five percent increase in price not due to external cost factors. If you find that such switching would occur, then you may conclude that the products are in the same product market.

In evaluating whether various products are reasonably interchangeable or are reasonable substitutes for each other, you may also consider: (1) consumers' views on whether the products are interchangeable; (2) the relationship between the price of one product and sales of another; (3) the presence or absence of specialized vendors; (4) the perceptions of either industry or the

public as to whether the products are in separate markets; (5) the views of Plaintiffs and Defendant regarding who their respective competitors are; and (6) the existence or absence of different customer groups or distribution channels.

In this case, Plaintiffs contend that the relevant product market is elite Quarter Horses and argue that elite Quarter Horses compete with each other and nothing else, and that no reasonable substitute exists. By contrast, Defendant asserts that the market for elite Quarter Horses cannot be distinguished from the broader Quarter Horse market.

*Relevant Geographic Market*: The relevant geographic market is the area in which Defendant faces competition from other firms that compete in the relevant product market and to which customers can reasonably turn for purchases. When analyzing the relevant geographic market, you should consider whether changes in prices or product offerings in one area have substantial effects on prices or sales in another area, which would tend to show that both areas are in the same relevant geographic market. The geographic market may be as large as global or nationwide, or as small as a single town or even smaller.

Plaintiffs have the burden of proving the relevant geographic market by a preponderance of the evidence. In this case, Plaintiffs claim that the relevant geographic market is the United States and Canada.

### Section 1 of the Sherman Act

Section 1 of the Sherman Antitrust Act states that "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."

People can join together lawfully to create and control an association for the purpose of promoting legitimate goals. To accomplish its goals, a breed association may legally make and enforce rules and requirements for registration of animals in the association. However, association rules denying registration may constitute a violation of Section 1 of the Sherman Act under certain circumstances. If the association's rules impair competition in a relevant market without a legitimate justification, then the use of those rules to exclude potential competitors, together with the other elements, violates Section 1.

To prevail on its Section 1 claim that Defendant's denial of registration to clones and their offspring constituted such a violation, Plaintiffs must prove each of the following elements by a preponderance of the evidence:

1. That Defendant has unique access to a business element essential to effective competition, so that registration is necessary for Plaintiffs to compete effectively in the market;

2. That decisions to exclude clones and their offspring from the AQHA registry were a result of concerted action. Generally, agreements within a single firm are treated as independent action on the presumption that the components of the firm will act to maximize the firm's profits. But agreements made within a firm can constitute concerted action covered by Section 1 when the parties to the agreement act on economic interests separate from those of the firm itself;

3. That the denial of registration to clones and their offspring unreasonably impairs competition in the relevant market;

4. That Defendant's denial of registration to clones and their offspring affects interstate commerce; and

5. That Plaintiffs were injured in their business or property because clones and their offspring were denied registration with Defendant.

The fact that each of the Stub Book and Registration Committee members voted in the same manner is not, by itself, sufficient to prove the existence of the alleged agreement. You may consider the Committee members' votes along with the other evidence in deciding whether the Committee members' conduct was the result of an agreement and not the result of separate decisions made by each Committee member on her or his own.

Relevant Market: As I have said, Plaintiffs must prove relevant market by proving both relevant product market and relevant geographic market by a preponderance of the evidence.

Associations: Under the law, an association such as the AQHA is a person, but it acts only through its agents. An association's agents includes its directors, committee members, officers, employees, or others acting on its behalf. For an association to be responsible for the acts of an agent, it is not necessary that the association specifically authorize the agent to commit those acts. Rather, the association is legally bound by the acts of its agent performed with apparent authority. Apparent authority is the authority that outsiders could reasonably believe the agent would have, judging from its position with the association, the responsibilities previously entrusted to it or its office, and the circumstances surrounding its past conduct.

Reasonableness: If you find that registration with AQHA is necessary to effectively compete in the relevant market, a rule that excludes certain horses from registration must be reasonably tailored to achieve Defendant's legitimate goals and be based on objective standards.

If you find that the evidence is insufficient to prove any one or more of these elements, then you must find for Defendant and against Plaintiffs on Plaintiffs' Section 1 claim. If you find that the evidence is sufficient to prove all five elements as to any or all Plaintiffs, then you must find for those Plaintiffs and against Defendant on Plaintiffs' Section 1 claim.

**Section 15.05(a) of the Texas Free Enterprise and Antitrust Act**

Like Section 1 of the Sherman Antitrust Act, Section 15.05(a) of the Texas Free Enterprise and Antitrust Act prohibits every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations. Because Section 15.05(a) of the Texas Act largely mirrors Section 1 of the Sherman Act, the elements to prove a violation of Section 15.05(a) are the same as the elements to prove a violation of Section 1, with one exception: to prove a violation of Section 15.05(a), Plaintiffs need not prove element 4 (that denial of registration affects interstate commerce).

### Section 2 of the Sherman Act

Section 2 of the Sherman Act states that "every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations," violates the law. Plaintiffs allege that they were injured by Defendant maintaining its monopoly over the elite Quarter Horse market by excluding clones from registration. To prevail on this claim, Plaintiffs must prove each of the following elements by a preponderance of the evidence:

1. That the alleged market is a valid antitrust market;

2. That Defendant possessed monopoly power in that market;

3. That Defendant "willfully" acquired or maintained monopoly power in that market by engaging in anticompetitive conduct;

4. That Defendant's conduct occurred in or affected interstate commerce; and

5. That Plaintiffs were injured in their business or property because of Defendant's anticompetitive conduct.

Relevant Market: As I have said, Plaintiffs must prove relevant market by proving both relevant product market and relevant geographic market by a preponderance of the evidence.

Monopoly Power is the power to control prices or exclude competition in a relevant antitrust market.

Proof of Monopoly Power: If you find by a preponderance of the evidence that Defendant has actually excluded horses born through somatic cell nuclear transfer, or those horses' offspring, from the elite Quarter Horse market by refusing to register them in the AQHA registry, then Defendant has market power in this market. Other factors you may consider in determining whether Defendant has monopoly power is the ability or difficulty of other breed

associations to enter the relevant market and the number and size of Defendant's current competitors, if any, in the relevant market.

Willful Maintenance of Monopoly Power: If you find that Plaintiffs have proven the existence of the relevant market and that Defendant possesses monopoly power in that market, then you must determine whether Plaintiffs have also proven that Defendant willfully maintained monopoly power through anticompetitive acts or practices.

Anticompetitive acts are acts, other than competition on the merits, that have the effect of preventing or excluding competition or frustrating the efforts of other companies to compete for customers within the relevant market. Harm to competition is to be distinguished from harm to a single competitor or group of competitors, which does not necessarily constitute harm to competition. In addition, you should distinguish the maintenance of monopoly power through anticompetitive acts from the maintenance of monopoly power by supplying better products or services, possessing superior business skills, or because of luck, which is not unlawful.

Mere possession of monopoly power, if lawfully acquired, does not violate the antitrust laws. A monopolist's conduct only becomes unlawful where it involves anticompetitive acts.

The difference between anticompetitive conduct and conduct that has a legitimate business purpose can be difficult to determine. Defendant alleges that its conduct was justified for business purposes. Plaintiffs contend that Defendant can show no legitimate business purpose.

In determining whether Defendant's conduct was anticompetitive or whether it was legitimate business conduct, you should determine whether the conduct is consistent with competition on the merits, whether the conduct provides benefits to consumers, and whether the

conduct would make business sense apart from any effect it has on excluding competition or harming competitors.

If you find that Plaintiffs have failed to prove any of these elements, then you must find for Defendant and against Plaintiffs on this claim.  If you find that Plaintiffs have proved each of these elements by a preponderance of the evidence as to any or all Plaintiffs, then you must find for those Plaintiffs and against Defendants on this claim.

### Section 15.05(b) of the Texas Free Enterprise and Antitrust Act

Like Section 2 of the Sherman Antitrust Act, Section 15.05(b) of the Texas Free Enterprise and Antitrust Act prohibits a person or trade association from abusing monopoly power in a particular market.  Because Section 15.05(b) of the Texas Act largely mirrors Section 2 of the Sherman Act, the elements to prove a violation of Section 15.05(b) are the same as the elements to prove a violation of Section 2, with one exception: to prove a violation of Section 15.05(b), Plaintiffs need not prove element 4 (that denial of registration affects interstate commerce).

## Antitrust Injury and Causation

If you find that Defendant has violated any section of the Sherman Antitrust Act or the Texas Free Enterprise and Antitrust Act as alleged by Plaintiffs, then you must decide if Plaintiffs are entitled to recover damages from Defendant.

Plaintiffs are entitled to recover damages for an injury to its business or property if they can establish three elements of injury and causation:

1. That Plaintiffs were in fact injured as a result of Defendant's alleged violation of the antitrust laws;

2. That Defendant's alleged illegal conduct was a material cause of Plaintiffs' injury; and

3. That Plaintiffs' injury is an injury of the type that the antitrust laws were intended to prevent.

The first element is sometimes referred to as "injury in fact" or "fact of damage." For Plaintiffs to establish that they are entitled to recover damages, they must prove that they were injured as a result of Defendant's alleged violation of the antitrust laws. Proving the fact of damage does not require Plaintiffs to prove the dollar value of their injury. It requires only that Plaintiffs prove that they were in fact injured by Defendant's alleged antitrust violation. If you find that Plaintiffs have established that they were in fact injured, you may then consider the amount of Plaintiffs' damages. It is important to understand, however, that injury and amount of damage are different concepts and that you cannot consider the amount of damage unless and until you have concluded that Plaintiffs have established that they were in fact injured.

Plaintiffs must also offer evidence that establishes as a matter of fact and with a fair degree of certainty that Defendant's alleged illegal conduct was a material cause of Plaintiffs' injury. This means that Plaintiffs must have proved that some damage occurred to them as a result of Defendant's alleged antitrust violation, and not some other cause. Plaintiffs are not

required to prove that Defendant's alleged antitrust violation was the sole cause of its injury; nor need Plaintiffs eliminate all other possible causes of injury. It is enough if Plaintiffs have proved that the alleged antitrust violation was a material cause of their injury. However, if you find that Plaintiffs' injury was caused primarily by something other than the alleged antitrust violation, then you must find that Plaintiffs have failed to prove that they are entitled to recover damages from Defendant.

Finally, Plaintiffs must establish that their injury is the type of injury that the antitrust laws were intended to prevent. This is sometimes referred to as "antitrust injury." If Plaintiffs' injuries were caused by a reduction in competition, acts that would lead to a reduction in competition, or acts that would otherwise harm consumers, then Plaintiffs' injuries are antitrust injuries. On the other hand, if Plaintiffs' injuries were caused by heightened competition, the competitive process itself, or by acts that would benefit consumers, then Plaintiffs' injuries are not antitrust injuries and Plaintiffs may not recover damages for those injuries under the antitrust laws. You should bear in mind that businesses may incur losses for many reasons that the antitrust laws are not designed to prohibit or protect against—such as where a competitor offers better products or services or where a competitor is more efficient and can charge lower prices and still earn a profit—and the antitrust laws do not permit a plaintiff to recover damages for losses that were caused by the competitive process or conduct that benefits consumers.

However, if Plaintiffs can establish that they were in fact injured by Defendant's conduct, that Defendant's conduct was a material cause of Plaintiffs' injury, and that Plaintiffs' injury was the type that the antitrust laws were intended to prevent, then Plaintiffs are entitled to recover damages for the injury to their business or property.

**Damages**

If Plaintiffs have proven any of their claims against Defendant by a preponderance of the evidence, you must determine the damages to which Plaintiffs are entitled. You should not interpret the fact that I have given instructions about Plaintiffs' damages as an indication in any way that I believe that Plaintiffs should, or should not, win this case. It is your task first to decide whether Defendant is liable. I am instructing you on damages only so that you will have guidance in the event you decide that Defendant is liable and that Plaintiffs are entitled to recover money from Defendant.

If you find that Defendant violated the antitrust laws and that this violation caused injury to Plaintiffs, then you must determine the amount of damages, if any, Plaintiffs are entitled to recover. The law provides that Plaintiffs should be fairly compensated for all damages to their business or property that were a direct result or likely consequence of the conduct that you have found to be unlawful.

The purpose of awarding damages in an antitrust action is to put an injured plaintiff as near as possible in the position in which it would have been if the alleged antitrust violation had not occurred. The law does not permit you to award damages to punish a wrongdoer—what we sometimes refer to as punitive damages—or to deter Defendant from particular conduct in the future, or to provide a windfall to someone who has been the victim of an antitrust violation. You are also not permitted to award to Plaintiffs an amount for attorneys' fees or the costs of maintaining this lawsuit. Antitrust damages are compensatory only. In other words, they are designed to compensate a plaintiff for the particular injuries it suffered as a result of the alleged violation of the law.

You may have heard or read that in antitrust cases such as this, damages are trebled, or multiplied by three. You are not to try to do this yourself. This is the job of the Court. In calculating damages, if any, you are only to try to determine actual or single damages.

Speculation Not Permitted: Damages may not be based on guesswork or speculation. If you find that a damages calculation cannot be based on evidence and reasonable inferences, and instead can only be reached through guesswork or speculation, then you may not award damages. If the amount of damages attributable to an antitrust violation cannot be separated from the amount of harm caused by factors other than the antitrust violation except through guesswork or speculation, then you may not award damages.

You are permitted to make reasonable estimates in calculating damages. It may be difficult for you to determine the precise amount of damage suffered by Plaintiffs. If Plaintiffs establish with reasonable probability the existence of an injury proximately caused by Defendant's antitrust violation, you are permitted to make a just and reasonable estimate of the damages. So long as there is a reasonable basis in the evidence for a damages award, Plaintiffs should not be denied a right to be fairly compensated just because damages cannot be determined with absolute mathematical certainty. The amount of damages must, however, be based on reasonable, non-speculative assumptions and estimates. Plaintiffs must prove the reasonableness of each of the assumptions upon which the damages calculation is based. If you find that Plaintiffs have failed to carry their burden of providing a reasonable basis for determining damages, then your verdict must be for Defendant. If you find that Plaintiffs have provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence.

Causation and Disaggregation: If you find that Defendant violated the antitrust laws and that Plaintiffs were injured by that violation, Plaintiffs are entitled to recover for such injury that was the direct and proximate result of the unlawful acts of Defendant.  Plaintiffs are not entitled to recover for injury that resulted from other causes.

Plaintiff bears the burden of showing that its injuries were caused by Defendant's alleged antitrust violation—as opposed to any other factors.  If you find that Plaintiffs' alleged injuries were caused by factors other than Defendant's alleged antitrust violation, then you must return a verdict for Defendant.  If you find that Plaintiffs' alleged injuries were caused in part by Defendant's alleged antitrust violation and in part by other factors, then you may award damages only for that portion of Plaintiffs' alleged injuries that were caused by Defendant's alleged antitrust violation.  Plaintiffs bear the burden of proving damages with reasonable certainty, including apportioning damages between lawful and unlawful causes.  If you find that there is no reasonable basis to apportion Plaintiffs' alleged injury between lawful and unlawful causes, or that apportionment can only be accomplished through speculation or guesswork, then you may not award any damages at all.  If you find that Plaintiffs have proven with reasonable certainty the amount of damage caused by Defendant's alleged antitrust violation, then you must return a verdict for Plaintiffs.

Lost Profits: Plaintiffs claim that they were harmed because they lost profits as a result of Defendant's alleged antitrust violation.  If you find that Defendant committed an antitrust violation and that this violation caused injury to Plaintiffs, you may calculate the profits, if any, that Plaintiff lost as a result of Defendant's antitrust violation.  To calculate lost profits, you must calculate net profit: the amount by which Plaintiffs' gross revenues would have exceeded all of the costs and expenses that would have been necessary to produce those revenues.

Expert Testimony Regarding Damages: You have heard testimony from Plaintiffs' expert, Christopher Pflaum, and from Defendant's expert, Keith Ugone, regarding the amount of damages to which Plaintiffs claim they are entitled and the proper amount of damages. If you find that any of the pertinent underlying assumptions made by one of these experts in preparing a damage report is not reasonable or is not proven by a preponderance of the evidence, or if you find that one of these expert's conclusions depend on a comparison of things which have not been proven to be comparable, then you should consider this in determining the weight—if any—you will give to these assumptions and the effect they have on Plaintiffs' damages claim.

Mitigation: Plaintiffs may not recover damages for any portion of their injuries that they could have avoided through the exercise of reasonable care and prudence. Plaintiffs are not entitled to increase any damages through inaction. The law requires an injured party to take all reasonable steps it can to avoid further injury and thereby reduce its loss. If Plaintiffs failed to take reasonable steps available to them, and the failure to take those steps results in greater harm to Plaintiffs than they would have suffered had they taken those steps, then Plaintiffs may not recover any damages for that part of the injury it could have avoided.

Defendant has the burden of proof on this issue. Defendant must prove by a preponderance of the evidence that Plaintiffs acted unreasonably in failing to take specific steps to minimize or limit their losses, that the failure to take those specific steps resulted in their losses being greater than they would have been had they taken such steps, and the amount by which Plaintiffs' loss would have been reduced had Plaintiffs taken those steps.

In determining whether Plaintiffs failed to take reasonable measures to limit their damages, you must remember that the law does not require Plaintiffs to have taken every conceivable step that might have reduced their damages. The evidence must show that Plaintiffs

failed to take commercially reasonable measures that were open to them.   Commercially reasonable measures mean those measures that a prudent businessperson in Plaintiffs' position would likely have adopted, given the circumstances as they appeared at that time. Plaintiffs should be given a wide latitude in deciding how to handle the situation, so long as what Plaintiffs did was not unreasonable in light of the existing circumstances.

Damages for Multiple Plaintiffs: In awarding damages, if any, you will be asked what sum of money would fairly and reasonably compensate each Plaintiff for any injury sustained by that Plaintiff.  Once a particular Plaintiff establishes that it is entitled to recover damages, the law permits that Plaintiff to recover only for those injuries it has sustained.  Therefore, if you find that two or more of the Plaintiffs are entitled to recover damages, caution should be exercised to be sure that each Plaintiff is awarded only damages for injuries it sustained.

**Final Instructions**

Any notes that you have taken during this trial are only aids to your memory.  If your memory differs from your notes, you should rely on your memory and not on the notes.  The notes are not evidence.  If you have not taken notes, you should rely on your independent recollection of the evidence and should not be unduly influenced by the notes of other jurors.  Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If during the course of your deliberations you wish to communicate with the Court, you should do so only in writing by a written note handed to the bailiff and signed by the Foreperson.

When you are retired to the jury room to deliberate upon your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence.  You will select your Foreperson, and after you have reached your unanimous verdict, you will return this charge together with your written answers to the questions.  Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.

You are further advised that the law does not require a juror to talk with anyone after he has reached his verdict unless the Court orders otherwise.

Your Foreperson will sign in the space provided after you have reached your verdict.


MARY LOU ROBINSON
UNITED STATES DISTRICT JUDGE


Date: July __26__, 2013.